**Robert C. FRANZ, Plaintiff,**

v.

**RAYMOND EISENHARDT & SONS, INC., Defendant.**

Civ. A. No. 88–4070 (HAA).

United States District Court,
D. New Jersey.

Feb. 28, 1990.

---

Robert C. Franz, Florham Park, N.J., plaintiff, pro se and Patricia A. Spillane,

Walder, Sondak, Berkeley & Brogan, Roseland, N.J., for plaintiff.

Peter S. Pearlman, Cohn & Lifland, Saddle Brook, N.J., for defendant.

HAROLD A. ACKERMAN, District Judge.

On September 20, 1988, Mr. Robert C. Franz brought this age discrimination and retaliation action against Raymond Eisenhardt & Sons, Inc. ("Eisenhardt"), pursuant to the federal Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–34. Before me now is the defendant's motion for summary judgment, challenging the plaintiff's ability to make his prima facie case as to his age discrimination and retaliation claims.

## BACKGROUND

The parties have agreed to the following facts contained in the pretrial order ("pto") filed with this court on December 26, 1989. The plaintiff was born on December 29, 1921 (pto, stipulation of facts, para. 1). The defendant employed the plaintiff in various roles since September, 1956, except for around one year (September, 1969 to June, 1970) (id. paras. 3–6). The defendant is a consulting firm which provides cost reduction services in product packaging (id. para. 2).

It is fair to say that while in the service of the defendant, the plaintiff rose through the ranks. He started out as a Project Director. The defendant promoted him to vice president in 1960; to senior vice president in 1965; and to executive vice president in 1967 (id. para. 3). The defendant promoted him to president in 1973 (id. para. 5). He held that position until 1977 (id.). From 1977 until 1984, the plaintiff held the position of vice chairman of the defendant (id. para. 6). In July, 1984, the defendant employed the plaintiff as president (id. para. 7). In August, 1985, the defendant replaced the plaintiff as president, installing Francis S. Farissey in that position (id. para. 8). Until the time of his termination (October 31, 1986), the plaintiff again held the vice-chairman position (id. paras. 8, 15). By August/September, 1986, the defendant paid a salary of $65,000 to the plaintiff (id. para. 10).

From 1965 through September, 1986, Raymond Eisenhardt owned and managed the defendant (id. para. 11). From 1985 to 1986, the defendant witnessed a decrease in its gross receipts of over half a million dollars (id. para. 12). In October, 1986, Mr. Eisenhardt sold his shares of stock in the company to Mr. Frank Prime and Mr. Harry Columbo, two of the defendant's salesmen (id. para. 14). These two purchasers and Mr. Farissey met with the plaintiff on October 14, 1986 and informed him that due to economics, the defendant was terminating the plaintiff effective October 31, 1986 (id. para. 15).

At this time, the defendant also terminated five other employees. Two, Andrew Crawford and Reginald Wardley, like the plaintiff, were operations engineers. At the time of their termination, Mr. Crawford was sixty-eight years of age and Mr. Wardley was seventy-two years of age (id. paras. 19, 20, 26). They were earning $55,000 and $45,000, respectively (id. para. 10). At the time of his termination, the plaintiff was sixty-five years of age. The defendant also terminated three other employees, respectively aged 46 years, 57 years, and 25 years (id. para. 26). After termination, the operations people that were left were Peter Henningsen (age 60), Harry Kaptein (age 51), and Harry Latowsky (age 60) (id. para. 27).

At the time of his termination, the plaintiff was the project director for the Miles Laboratories account and the project engineer for the Asahi Chemicals account (id. para. 9). The defendant, as it did with Mr. Wardley and Mr. Crawford, retained the plaintiff, on a per diem plus expenses basis, as an independent consultant (id. para. 20). Apparently, the plaintiff functioned in this capacity from November 7, 1986 until March 13, 1987, working primarily on the Miles and Asahi accounts (id. paras. 21, 24). The defendant did not assign him any other client projects, besides Miles and Asahi, during this time (id. para. 25).

On March 16, 1987, the plaintiff filed an EEOC charge of age discrimination with respect to his October, 1986 termination (id.

para. 22). The defendant received the charge sometime that week. On November 10, 1987, the plaintiff again filed an EEOC complaint, this time alleging that the defendants had retaliated against him for filing the original charge by abruptly terminating his consultant's work after learning that he had filed an age-discrimination complaint with the EEOC (id. para. 32). On September 26, 1988, the EEOC determined not to investigate the retaliation charge because this lawsuit was already proceeding (id. para. 33). In December, 1988, the EEOC, reaffirming an August, 1988 determination, concluded that there was no age-discrimination violation based on the evidence before it (id. paras. 30–31).

In his September 20, 1988, pro se complaint, the plaintiff alleged that his termination violated the age discrimination in employment act and that the purported retaliation also violated the antiretaliation section of ADEA. The plaintiff further alleged that these violations were willful (complaint para. 21). The plaintiff thus sought backpay and benefits, reinstatement or front pay in lieu of reinstatement, double damages, damages for emotional distress, reasonable attorney's fees and costs (complaint, at 4).

Now, after discovery, the defendant has moved for summary judgment. In so moving, the defendant argues that there are no genuine issues of material fact as to certain elements essential for the plaintiff to make his prima facie case as to both claims, and, since the defendant is entitled to judgment as a matter of law, judgment should issue in its favor. Specifically, as to the age-discrimination claim, the defendant contends that the plaintiff's responsibilities were in chief assumed by a sixty-year old (Mr. Latowsky) upon the plaintiff's October, 1986 termination. Per the defendant, since this individual was not "sufficiently younger" than the plaintiff, the plaintiff cannot make a prima facie case of age discrimination. As for the retaliation claim, the defendant argues that the plaintiff could not possibly state a prima facie case because the defendant took no action at all with respect to terminating the plaintiff's consultancy. Moreover, the defendant argues that the plaintiff is not an employee within the contemplation of ADEA's antiretaliation provision.

## DISCUSSION

Under Federal Rule of Civil Procedure 56(c), a grant of summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law" (emphasis added). An issue is "genuine" "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see Williams v. Borough of West Chester*, 891 F.2d 458 (3d Cir.1989). In *Williams*, the United States Court of Appeals for the Third Circuit defined the amount of evidence necessary to make an issue "genuine." The appellate court explained that the affirmative evidence adduced by the nonmovant in opposition to the application, regardless of its direct or circumstantial nature, "must amount to more than a scintilla [, "a mere trace"], but may amount to less (in the evaluation of the court) than a preponderance." 891 F.2d at 460–61, 464. As to materiality, the substantive law will identify what facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Liberty Lobby, Inc.*, 477 U.S. at 248, 106 S.Ct. at 2510 (*citing* 10A C. Wright, A. Miller, & M. Kane, *Federal Practice & Procedure* § 2725, at 93–95 (1983)).

On a motion for summary judgment, the movant bears the burden of demonstrating the absence of material facts requiring trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Where, as here, the nonmovant (plaintiff) would bear the ultimate burden of persuasion at trial, "the party moving for summary judgment

may meet its burden by showing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the nonmovant's burden at trial." *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 896 (3d Cir.), *cert. dismissed,* 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987), *quoted in Jalil v. Avdel Corp.,* 873 F.2d 701, 706 (3d Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 725, 107 L.Ed.2d 745 (1990). In the context of a disparate-treatment discrimination action, where the United States Supreme Court's familiar teachings in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), come into play,[1] the United States Court of Appeals for the Third Circuit has observed that

> a defendant is entitled to summary judgment if it can demonstrate that the plaintiff could not carry its burden of proof at trial. The defendant may demonstrate this in two ways: it may show that the plaintiff is unable to establish a prima facie case of discrimination; or, if the plaintiff has successfully established a prima facie case, the defendant may win summary judgment by showing that the plaintiff could not produce sufficient evidence of pretext to rebut an assertion of nondiscriminatory reasons for discharge.

*Jalil,* 873 F.2d at 707. The defendant, as indicated above, has taken the first tack with respect to both claims. I will assess its arguments in turn, first dealing with the age-discrimination claim.

**1.** The proof framework in a disparate treatment case should be clear. As the *Jalil* court lately stated, summarizing *McDonnell Douglas* and *Burdine:*

> Plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. Once the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to rebut the proof of discrimination by articulating some legitimate nondiscriminatory reason for the employee's discharge. The ultimate burden of persuasion, which remains always with the plaintiff, may then be met by proving by a preponderance of the evidence that the alleged reasons proffered by the defendant were

### 1. Age Discrimination

Turning to an analysis of the substantive law contained in the federal age discrimination statute, as I must to determine materiality, Congress has provided that "it shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). According to the most recent United States Court of Appeals for the Third Circuit precedent, a person generally can establish a prima facie case, thereby raising an inference of unlawful discrimination, by demonstrating that (1) he was a member of the class protected by the ADEA, (2) that he was qualified for the position from which he was terminated, (3) that the defendant terminated him despite these qualifications, and (4) that the position was then filled by a person sufficiently younger than the plaintiff to permit an inference of age discrimination. *See Siegel v. Alpha Wire Corp.,* 894 F.2d 50 at 52 (3d Cir.1990) (*citing Healy v. New York Life Ins. Co.,* 860 F.2d 1209, 1214 (3d Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 2449, 104 L.Ed.2d 1004 (1989)). The defendant has seized upon this standard in presenting its argument to me.

The defendant's challenge to the plaintiff's prima facie case is a narrow one. It concentrates its attack on the fourth element articulated in *Siegel* —the "sufficiently younger" element. Apparently, with no contrary evidentiary submissions

> pretextual and that the defendant intentionally discriminated against the plaintiff. *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53 [101 S.Ct. 1089, 1093–94] ... (1981).... The plaintiff may satisfy the ultimate burden of proving discrimination "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256 [101 S.Ct. at 1095].... Circumstantial evidence may suffice to challenge the defendant's alleged reasons as pretextual....
> *Jalil,* 873 F.2d at 707 (citations partially omitted).

emanating from the plaintiff, there is no dispute that a lion's share of the plaintiff's duties after his termination fell to Mr. Harry Latowsky, who was a little over sixty-years old at the time of the plaintiff's termination (see Farissey Aff. para. 4). The defendant thus contends that Mr. Latowsky was not sufficiently younger than the plaintiff and, therefore, that, as a matter of law, judgment should adhere in the defendant's favor on the age-discrimination claim.

I do not agree with the defendant. I believe that its reading of the "requirements" for a prima facie case is too narrow. A *McDonnell Douglas* analysis, like the one I undertake here, is neither rigid nor mechanized. Its primary focus is always on whether an employer treats an employee less favorably than other employees for impermissible reasons, such as age. See *EEOC v. Metal Service Co.*, 892 F.2d 341 at 347–348 (3d Cir.1990) (title VII); *Montana v. First Federal Sav. & Loan Ass'n*, 869 F.2d 100, 104 (2d Cir.1989) (ADEA) (*both citing Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978)); *Douglas v. Anderson*, 656 F.2d 528, 532 (9th Cir.1981) (ADEA); *Obitko v. Ohio Barge Line, Inc.*, 628 F.Supp. 62, 64–65 (W.D.Pa.1986) (ADEA). Clearly, the evidentiary value of the age of the replacement will depend on the other evidence of discrimination (direct and/or circumstantial) utilized in the attempt to establish the prima facie case. See *Maxfield v. Sinclair Int'l*, 766 F.2d 788, 792 (3d Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 796, 88 L.Ed.2d 773 (1986). In this action, not only is it undisputed that the defendant employed a man five years younger to carry on the plaintiff's tasks, but it also undisputed that the defendant terminated two other operations men of advanced years, while leaving three younger men to carry out tasks in its operations sector (*see* pto, stipulation of facts, paras. 26–27). I believe that this evidence, in addition to there apparently being no dispute at this time that the plaintiff (1) was in the protected class, (2) was terminated, and (3) was qualified for the position, is sufficient to indicate that there is at least a genuine issue of material fact as to whether the plaintiff can make its prima facie case and therefore obtain an inference of age discrimination.[2]

The defendant would have me hold that a five-year age difference is insignificant as a matter of law to create an inference of age discrimination. However, other courts have permitted the inference where there was a similar age differential, *e.g.*, *Douglas*, 656 F.2d at 530, 532–33, or, even more compelling, where the replacement was *older* than the plaintiff. *E.g.*, *Obitko*, 628 F.Supp. at 63, 65; *Smith v. World Book–Childcraft Int'l, Inc.*, 502 F.Supp. 96, 102 (N.D.Ill.1980); *see also Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013 n. 9 (1st Cir.1979) (Campbell, C.J.). These holdings seem wise for they obviate the occasion of a ruse whereby the employer may mask its age discrimination by hiring an elder or not "sufficiently younger" individual who is in collusion with the employer. *See* id. at 1013 n. 9. Therefore, I will not adopt the defendant's proposed rule. I believe that my rejection of the defendant's position does not make a mockery of the ADEA, as the defendant asserts, but rather adheres to its tenor—to protect against unlawful discrimination on the basis of age.

Accordingly, I will deny the defendant's motion for summary judgment on the age-discrimination claim.

---

**2.** I particularly find this evidence sufficient to evade summary judgment on the issue of the prima facie case because this is an intent-based claim, a type not usually susceptible to summary determination. As the United States Court of Appeals for the Third Circuit has recognized on innumerable occasions:

[when] intent is a substantive element of the cause of action—generally to be inferred from the facts and conduct of the parties—the principle is particularly apt that courts should not draw factual inferences in favor of the moving party and should not resolve any genuine issues of credibility.

*Ness v. Marshall*, 660 F.2d 517, 519 (3d Cir. 1981), *quoted in Jalil*, 873 F.2d at 707; *see also Healy*, 860 F.2d at 1214 n. 1 (prima facie case is "easily made out.... [g]enerally, the focus of age discrimination cases centers [on] the defendant's articulated legitimate business reasons and the plaintiff's evidence of pretext.").

## 2. Retaliation

■ Turning to the plaintiff's retaliation claim, it is again necessary to define the boundaries of materiality by starting with the relevant statutory provision. Under the ADEA,

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment ... because such individual ... has opposed any practice made unlawful by this section, or because such individual ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA].

29 U.S.C. § 623(d). To establish a prima facie case of unlawful retaliation, the plaintiff must show (1) that he engaged in a protected activity; (2) that the defendant acted adversely to the plaintiff's interest subsequent to or contemporaneously with the protected activity; and (3) that a causal link exists between the plaintiff's protected activity and the defendant's detrimental activity. *See, e.g., Jalil,* 873 F.2d at 708 (*citing Jordan v. Clark,* 847 F.2d 1368, 1376 (9th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 786, 102 L.Ed.2d 778 (1989); *Waddell v. Small Tube Products, Inc.,* 799 F.2d 69, 73 (3d Cir.1986)).

■ In moving for summary judgment on this issue, the defendant states that it took no action that was adverse to the plaintiff. In this regard, it puts forth the affidavit of Francis S. Farissey, its president since August, 1985. He states that he wrote a memorandum to the plaintiff indicating that the plaintiff would be an independent contractor with responsibilities involving the Miles and Asahi accounts (Farissey Aff. para. 7). He further states that on March 13, 1987, the last day that the plaintiff worked in any capacity for the defendant, the plaintiff finished his work on the Miles and Asahi accounts (id. para. 8). According to Mr. Farissey, Mr. Franz asked him if there was any work for the week starting March 16, 1987. Mr. Faris-

sey said "no," since the plaintiff had finished his work with the Miles and Asahi projects (id. para. 9). However, Mr. Farissey told the plaintiff to call him during the week of March 16th "to check on the status of things" (id.). Mr. Farissey states that Mr. Franz never contacted him regarding further work as a consultant (id. para. 10). This information, I conclude, satisfies the movant's initial burden of identifying the portions of the record evidence which it believes demonstrates the absence of a genuine issue of material fact as to the alleged adverse action—the second element of the prima facie retaliation case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ Since the movant (defendant) has satisfied his burden of producing evidence indicating a lack of a genuine issue of material fact with respect to an essential element of the nonmovant's (plaintiff's) prima facie case, it is incumbent upon the nonmovant " 'to present affirmative evidence in order to defeat a properly supported motion for summary judgment.' " *Williams,* 891 F.2d at 460 (*quoting Liberty Lobby, Inc.,* 477 U.S. at 256–57, 106 S.Ct. at 2514–15). As the appellate court noted, assessing whether the plaintiff has carried its burden in a particular case requires the court "to make difficult, fact-specific, perhaps somewhat arbitrary judgments." Id. at 460–61.

In the instant case, I make this judgment in the movant's favor. The nonmovant has not put forth in the proper form any affirmative evidence rebutting the defendant's assertion that it was the plaintiff's responsibility to call and inquire about further consulting work.[3] Instead, the plaintiff relies on assertions in his brief, stating,

> Assignments did arise after March 16, 1987 which plaintiff was admittedly qualified to perform; yet defendant did not lift one finger to communicate with plaintiff and furnish him with work. Plaintiff, incidentally, flatly denies that Farissey told him on March 13, 1987 to check

---

**3.** In fact, the only submission that the court possesses from the plaintiff in opposition to the defendant's motion is the plaintiff's brief.

with regarding future assignments; but merely said something to the effect that he would be in touch with plaintiff, a commitment he never kept. Defendants emphasis on plaintiff's failure to seek work from defendant is a woefully incomplete version of what in fact were the actual circumstances of this matter.

Plaintiff's Brief, at 6. However, evidence cannot be put forward, as it was here, in a brief or memorandum of law and then be recognized by the court. *E.g., Proctor v. Sagamore Big Game Club*, 265 F.2d 196, 198–99 (3d Cir.) *cert. denied*, 361 U.S. 831, 80 S.Ct. 81, 4 L.Ed.2d 73 (1959); 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure* § 2723, at 64 & n. 10 (2d ed.1983) (citing cases, including *Proctor* ); *see also Childers v. Joseph*, 842 F.2d 689, 694–95 (3d Cir.1988); *Sayers v. Automated Transportation, Inc.*, 645 F.Supp. 194, 196 (W.D.Pa.1986). In the related context of the requirement of an affidavit to satisfy Fed.R.Civ.P. 56(f), the United States Court of Appeals for the Third Circuit explained why courts should not accept, as fact, statements in briefs or memoranda. The appellate court observed

> statements in the memorandum [are] not made by a witness or other affiant, but in the course of advocacy by [an] attorney. We cannot diminish the value of an [evidentiary submission] by permitting an attorney's unsworn statement to replace it. The adversary system recognizes the right and practice of attorneys to take adversarial license with evidence and argue it as fact. It does not recognize argument as a surrogate for either evidence or fact.

*Radich v. Goode*, 886 F.2d 1391, 1394–95 (3d Cir.1989). Accordingly, I will not accept the assertions in the plaintiff's memorandum. Hence, the movant's view of the facts indicates to me that it left it up to the plaintiff to contact it about more independent consulting work. Since there is no evidence in the record that rebuts this assertion or that the plaintiff exercised this invitation, I conclude that a reasonable jury could not find that the plaintiff suffered retaliation by not being offered any more assignments because it appears that the plaintiff did not take the necessary affirmative step to garner other assignments.

Let me note before concluding that so far in this part of the discussion I have assumed for argument's sake that the plaintiff was still an "employee" after his termination. However, on the spare record before me, I am also compelled to conclude that the plaintiff has not put forth evidence indicating a genuine issue of material fact that he was an "employee" for the purposes of 29 U.S.C. § 623(d), largely for the same reasons that I concluded that the plaintiff did not put forth a genuine issue of material fact regarding the substance of his retaliation claim.

 Again starting with the statute, the promulgated definition of "employee" does not provide much guidance to the court. See 29 U.S.C. § 630(f) ("[t]he term 'employee' means an individual employed by the employer"). However, in *EEOC v. Zippo Mfg.*, the United States Court of Appeals for the Third Circuit provided some more precise standards, articulating a twelve-factor "totality of circumstances" test, including (1) the employer's right to control the means and manner of the worker's performance; (2) the kind of occupation—supervised or unsupervised; (3) skill; (4) who furnishes the equipment and workplace; (5) the length of time in which the individual has worked; (6) the method of payment; (7) the manner of termination of the work relationship; (8) whether there is annual leave; (9) whether the work is an integral part of the business of the "employer;" (10) whether the worker accrues retirement benefits; (11) whether the "employer" pays social security taxes; and (12) the intention of the parties. 713 F.2d 32, 37 (3d Cir.1983); *see Golden v. A.P. Orleans, Inc.*, 681 F.Supp. 1100, 1101–02 (E.D.Pa.1988). The most important of these factors is the first, the employer's right to control the means and manner of the worker's performance. Id. at 1101 (*citing Zippo*, 713 F.2d at 37).

 I believe that the defendant has satisfied its initial burden of showing no genuine issue of material fact as to the

proposition that the plaintiff was not an "employee" within the meaning of ADEA. It is undisputed that the plaintiff was paid on a per diem plus expenses basis, not salaried, as an independent consultant (pto, stipulation of facts, para. 20). The defendant, through the Farissey affidavit, also indicates that the plaintiff would have to call to inquire if any work was available (Farissey Aff. para. 9). The defendant has also offered Mr. Franz's deposition testimony which indicates that he was "an outside consultant strictly on [his] own, not being a member of the company any more or any of the benefits" and that he would work normally one or two days per week (Franz Dep. at 64). Further, there was apparently no formal modality for termination (*see* Farissey para. 10). In view of this evidence, I believe that (1) since the plaintiff apparently had control over when he would work, (2) since he was paid on a per diem basis; (3) since it was contemplated that he would work sporadically, one or two days per week; (4) since he apparently had no benefits, such as annual leave or pension, while in this position; (5) since there was no formal modality for termination; and (6) since he considered himself an independent consultant, not an employee after his termination, the defendant has shown enough to indicate that there is no genuine issue of material fact as to the "employee" question—that is, the plaintiff was an independent consultant, not an employee under *Zippo* and its progeny.

Thus, it is up to the plaintiff to come forward with affirmative evidence creating a genuine issue of material fact as to his "employee" status. Again, the plaintiff does not present affirmative record evidence to me, but rather, relies on factual assertions contained in its brief in opposition. Therein, he states that he

> had *no opportunity to profit by using his own entrepreneurial judgment*. He had no independent place of business; he worked on defendant's premises or on those of defendant's clients; he used defendant's facilities; his pay was set by the defendant and he was not free to determine, any more than any other packaging consultant employed by defendant, a method to reach the ultimate obligations of the business. His work, "in essence followed the usual path of an employee;" ...

Plaintiff's Brief at 5 (*quoting Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947)). As before, these assertions are not cognizable because they are not in the proper form. I therefore conclude that the defendant also deserves summary judgment on the retaliation claim based on the "employee" question since the plaintiff has not met its burden of demonstrating affirmative evidence creating a genuine dispute with respect to the issue of whether he was an "employee" under ADEA.

In sum then, I will grant the defendant's summary judgment application with respect to the retaliation claim because the plaintiff has not demonstrated a genuine issue of material fact as to (1) adverse action in retaliation for filing his EEOC complaint and (2) his purported status as an "employee," after his termination.

## CONCLUSION

For the above reasons, I deny the defendants' motion for summary judgment with respect to the age-discrimination claim. I, however, grant the defendant's application with respect to the retaliation claim. That claim is hereby dismissed. The defendant should fashion a form of order reflecting my decision.

Let me also take care of a scheduling matter at this time. I believe that I left it with the parties that I would determine the due date of their trial briefs and other submissions after rendering my decision today. You now have heard my decision. The parties will have ten days from the date of the filing of the order reflecting my decision today to submit to me all memoranda and other papers in support of their positions at trial.